W. D. JOHNSON, Respondent, v. J. I. CASE THRESHING MACHINE COMPANY, Appellant.

St. Louis Court of Appeals, February 8, 1916.

MASTER AND SERVANT: Independent Contractor: Injury to Third Person: Defective Appliances: Liability of Master. Where defendant engaged an engineer to take a threshing outfit, consisting of an engine and separator, over the public highways during a dry season of the year, and the spark arrester

on the engine had a very large hole in it, through which sparks and burning embers freely passed and were scattered broadcast in such a manner that it had been known to set fire to the separator when one hundred, sixty feet away, and a fire, which originated from sparks that escaped from the engine, destroyed certain ricks of hay belonging to plaintiff, it was immaterial whether or not the engineer was in fact an independent contractor or the agent of defendant, since the condition of the engine was such as to render its operation along the highway a great danger to the property of others, the responsibility for which defendant could not avoid by turning the engine over to an independent contractor; the rule being, that where work is attended with danger to others, and mischievous consequences will result from the performance thereof, unless special precautionary measures are adopted, the duty rests upon the employer to see that such measures are duly employed, which duty he cannot shift to another and escape liability for its nonperformance by having the latter perform the work as an independent contractor.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

AFFIRMED.

*E. S. Gantt* for appellant.

(1) The engineer, Gene Williams, in moving the engine in question, was an independent contractor, and the court erred in refusing to instruct a verdict for the defendant at the close of the evidence for the plaintiff and at the close of all the evidence. Long v. Moon, 107 Mo. 334; Railroad v. Yonley, 13 S. W. 333; Shearman & Redfield on Negligence (5 Ed.), par. 164; Kellogg v. Payne, 21 Iowa 575; 1 Thompson on Negligence, par. 622, 639; 26 Cyc. 1546; Burns v. McDonald, 57 Mo. App. 599; Shute v. Town of Princeton, 59 N. W. 1050; Fink v. Mo. Furnace Co., 82 Mo. 276; Drennen v. Smith, 115 Ala. 396; Crenshaw v. Ullman, 113 Mo. 633; Emmerson v. Fay, 94 Va. 60; Gayle v. Car Co., 177 Mo. 427, 446, 447; O'Hara v. Gas Co., 131 Mo. App. 428; Hexamer v. Webb, 101 N. Y. 377; Leavitt v. Railroad Co., 89 Me. 509; McCarthy v. Portman

Parish, 71 Me. 318; DeForrest v. Wright, 2 Mich. 368. (2)   The work of moving the engine from Molino to Mexico was not intrinsically or inherently dangerous. Bibb v. Railroad, 87 Va. 711; Kellogg v. Payne, 21 Ia. 575; Railroad Co. v. Moores, 80 Md. 348; St. Louis, etc. v. Yonley, 53 Ark. 503; Maltbie v. Bolting, 26 N. Y. Supp. 903; Negus v. Becker, 143 N. Y. 303; Ferguson v. Hubble, 143 N. Y. 507; Pierrepont v. Lovelace, 72 N. Y. 211; Neumann v. Real Estate Co., 73 Mo. App. 326.   (3)   Defendant had a lawful right to have the engine moved to Mexico for shipment.   The moving of the engine in its condition was not the proximate cause of the injury.   The proximate cause of the injury was the negligence, if any, of the independent contractor in using wood to fire the engine and in moving the engine when the wind was high and from the southwest, and the country covered with dry and combustible vegetation.   The contract of the defendant with engineer Williams to move the engine required him to move it in no certain time.   It left that matter to Williams' own judgment.   Leavitt v. Railroad, supra;   McCarthy v. Portman Parish, supra; Burbank v. Mill Co., 75 Me. 375.

*David H. Robertson* for respondent.

(1)   The presumption is, that defendant owning the engine and Williams being in charge thereof, he was the agent of defendant and not an independent contractor;  so that it was a question for the jury whether or not Williams was an agent.  Kampmann v. Rothwell, 107 S. W. 122; Fleishman v. Ice and Fuel Co., 148 Mo. App. 135; Taylor B. & H. Co. v. Warner, 32 S. W. 870; Perry v. Ford, 17 Mo. App. 220; Shearman & Redfield on Neg. (6 Ed.), sec. 158.   (2)   If the jury found Williams to be an agent then under the evidence it was a question for the jury as to whether he was guilty of negligence in operating the engine

when the wind was high, the vegetation dry and combustible and when the evidence showed the engine did emit sparks so as to cause a fire. 2 Thompson, Neg., sec. 2263; 3 Elliott, Railroads, sec. 1228; Railroad Co. v. Fritts, 68 L. R. A. 864; McFarland v. Sayer, 156 Mich. 426; Cook v. Doud Sons & Co., 147 Wis. 271; Friedrich v. Klise, 145 N. W. 353; Bedford v. Railroad Co., 46 Mo. 456; Coates v. Railroad Co., 61 Mo. 38; Coale v. Railroad Co., 60 Mo. 227; Kenney v. Railroad Co., 70 Mo. 243, 252; Wise v. Railroad Co., 85 Mo. 178; Crews v. Railroad Co., 19 Mo. App. 302; Miller v. Railroad Co., 10 Mo. 389, 2 S. W. 439; Logan v. Railroad Co., 43 Mo. App. 71; Polhaus v. Railroad Co., 45 Mo. App. 153; Otis Co. v. Railroad Co., 112 Mo. 622, 20 S. W. 676; Reed v. Railroad Co., 50 Mo. App. 504. (3) Although the jury might find Williams was an independent contractor, yet if they also found that the engine was so defectively constructed that it was inherently dangerous and liable to set out a fire then the defendant could not be absolved from liability by letting the work to an independent contractor and the plaintiff was entitled to recover. Thomas v. Lumber Co., 153 N. C. 351, 32 L. R. A. (N. S.) 584.

ALLEN, J.—This is an action to recover the value of certain hay belonging to plaintiff alleged to have been destroyed by fire originating from a spark or sparks negligently allowed to escape from a traction engine of defendant which was being propelled along a highway adjacent to plaintiff's farm in Audrain county, Missouri. There was a verdict and judgment in plaintiff's favor for $290, and the defendant prosecutes the appeal.

It appears that a certain traction engine and "separator" had been sold by the defendant to one Mitchell, but the latter defaulted in payments to be

made by him to defendant therefor, and defendant, through an agent, took possession of the property which was then upon a farm about three and one-half miles from the town of Molino, Missouri, and caused the same to be brought to the latter place and sold under a chattel mortgage held by defendant thereon. At this sale defendant became the purchaser thereof, and thereupon caused the engine and separator to be moved to Mexico, Missouri. The engine, propelled by its own power and drawing the separator, was moved along a public road adjoining plaintiff's farm, upon a day, according to the evidence, when the weather was quite dry and when a very strong wind was blowing in the direction of plaintiff's meadow, which was covered with dry grass. A fire started in this meadow near the road shortly after the engine had passed, and the evidence tends to show that it originated from a spark or sparks thrown therefrom. The engineer in charge of the engine testified that fire was discovered in plaintiff's meadow by a man accompanying him, and that they stopped and, as they thought, extinguished the same. It appears, however, that the fire was not completely extinguished, and that it later burned across the meadow and reached and destroyed plaintiff's ricks of hay on the farther side thereof.

It is admitted, for the purposes of this appeal, that the fire was sent out by a spark or sparks from the engine, and it is also conceded that the verdict is not excessive. The negligence charged in the petition is as follows:

"First, said engine was negligently constructed and defective as aforesaid, in that it did not have a spark arrester sufficient to prevent the escape of sparks; second, that it was negligence in the defendant to cause said engine to be moved through the country under the conditions aforesaid; third, it was negligence in the defendant to furnish the persons in

charge of said engine with an implement from the construction of which necessarily fire was used in moving said engine and thresher along the public road; and, fourth, said engine was negligently handled, managed and controlled by those in charge thereof and in the employment of the said defendant in moving said engine and thresher.''

The answer is a general denial, coupled with a plea to the effect that defendant contracted with a competent engineer, one Williams, to take this property to Mexico and there load it upon cars for shipment; that in moving said ''threshing outfit'' Williams ''was acting as an independent contractor without instructions or directions as to details of said work;'' and that if plaintiff suffered any damages in the premises ''it was from the acts of negligence of said Eugene Williams in the performance of his contract for the moving of said machinery and not otherwise.''

There are no assignments of error, as such, in appellant's brief. One point made by appellant is that the evidence conclusively showed that Williams, the engineer in charge of the engine, was an independent contractor, and that the court erred in refusing to direct a verdict for defendant on this ground. It is true that the testimony of Williams, called as a witness for plaintiff, tended to show an agreement between him and defendant's representative whereby he was to move the threshing outfit to Mexico and load it upon cars there, furnishing the necessary help, a team to draw the water tank, the fuel, oil, etc.; but we are not prepared to say that the evidence taken as a whole was conclusive as to the relation existing between Williams and defendant. In any event it is unnecessary to dwell upon the matter, in the view which we take of the case.

The evidence showed that the spark arrester upon this engine had a very large hole in it, through which

sparks and burning embers freely passed and were emitted and scattered broadcast. It had been in this condition for many months and was furnished to Williams in this condition to be driven across the country. The evidence shows that it was customary for sparks or burning embers to be thrown out by the engine both when operated to run a separator for threshing purposes and when driven along by its own power. More of these were emitted, it is said, when wood was used as fuel than when coal was burned, but in any event when the engine was "laboring" it appears that sparks and "fire" were cast out through the smoke stack by the force of the "exhaust" in great quantity. The distance to which such burning particles would fly depended of course, to a considerable extent, upon wind and weather conditions. The former owner testified that the engine had thus set fire to the separator when the latter was one hundred and sixty feet from it. At the precise time here in question coal, it is said, was being used as fuel, though pieces of wood had been picked up along the road from time to time and used to supplement the coal. And it seems that the fire originated near a hill, and, evidently, while the engine was laboring to ascend the same. The instrumentality therefore with which the alleged independent contractor was required to work was defective, and its condition was such as to render its operation along a highway, where, as here, there was much inflammable matter near at hand, one attended with grave danger to the property of others unless special precautionary measures were taken in the premises. In our opinion the facts of the case fall within the rule that where the work is "attended with danger to others," and mischievous consequences will result from the performance thereof, unless special precautionary measures are adopted, a duty rests upon the employer, or proprietor, to see that such precautionary measures

are duly employed, which duty he cannot shift to another· and escape liability for its nonperformance by having the latter perform the work as an "independent contractor." And this rule we believe to be sound upon principle and supported by the great weight of authority.

It is frequently said that this exception to the rule of nonliability for the acts of an independent contractor obtains where the work let to the contractor is "necessarily," "inherently," or "intrinsically," dangerous. But what is meant appears to be well stated in 26 Cyc. p. 1559, as follows:

"Another exception to the general rule, closely related to the one just considered, is that where the work is dangerous of itself, or as often termed is "inherently" or "intrinsically" dangerous, unless proper precautions are taken, liability cannot be evaded by employing an independent contractor to do the work. Stated in another way, where injuries to third persons must be expected to arise unless means are adopted by which such consequences may be prevented, the contractee is bound to see to the doing of that which is necessary to prevent the mischief. The injury need not be a necessary result of the work; but the work must be such as will probably, and not which merely may, cause injury if proper precautions are not taken."

In O'Hara v. Gas Light Co., 244 Mo. l. c. 409, 148 S. W. 884, it is said:

"The rule announced by 2 Thompson on Negligence, page 899, and approved by this court in Loth v. Columbia Theatre Co., 197 Mo. l. c. 354, is: 'The general rule is, that one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work, not in itself unlawful or *attended with danger to others,* according to the contractor's own methods, ·and without his being subject to control, except as to the results of his work,

will not be answerable for the wrongs of such contractor, his subcontractors, or his servants, committed in the prosecution of such work.' '' (Italics ours.)

And see: Wiggin v. St. Louis, 135 Mo. 558, 37 S. W. 528; Salmon v. Kansas City, 241 Mo. 14, 145 S. W. 16; Carson v. Blodgett Const. Co., 189 Mo. 120, 174 S. W. 44; Thomas v. Lumber Co., 153 N. C. 351, 32 L. R. A. (N. S.) 584; St. Louis, etc. Ry. Co., v. Madden, 77 Kan 80, 17 L. R. A. (N. S.) 788; Railway Co., v. Yorley, 53 Ark. 503, 9 L. R. A. 604; Moll on Independent Contractors, sec. 72, et seq.

In Covington, etc., Bridge Co., v. Steinbroch, 61 Ohio St. 215, 76 Amer. St. Rep. 375, a leading case, it is said:

''The weight of reason and authority is to the effect that, where a party is under a duty to the public or a third person to see that work he is about to do, or have done, is carefully performed so as to avoid injury to others, he cannot, by letting it to a contractor, avoid his liability in case it is negligently done to the injury of another (citing numerous authorities.) The duty need not be imposed by statute, though such is frequently the case. If it be a duty imposed by law, the principle is the same as if required by statute. COCKBURN, C. J., in Bower v. Peate, supra. (1 Q. B. Div. 321.) It arises at law in all cases where more or less danger to others is necessarily incident to the performance of the work let to contract. It is the danger to others, incident to the performance of the work let to contract, that raises the duty and which the employer cannot shift from himself to another so as to avoid liability, should injury result to another from negligence in doing the work.''

This is followed and applied in Thomas v. Lumber Co., supra, a well considered case, in passing upon the question of the liability of a railroad company at common law, for damages caused by fire sent out by sparks

emitted from a defectively equipped engine which was being operated at the time by an "independent contractor."

As may well be expected, the decisions are by no means uniform in applying this doctrine. Whether work of a given character is to be regarded as "necessarily," "inherently" or "intrinsically" dangerous, or its performance "attended with danger to others," within the meaning of such terms when used in this connection, is often a matter as to which different opinions may be entertained. It has been repeatedly held that blasting in a public street or highway is work attended with such danger to others as to preclude one from shifting to an "independent contractor" the duty to guard against injuries to third persons. [See Carson v. Blodgett Const. Co., supra, and authorities cited.] It has been frequently held that the same measure of duty is imposed upon one who contracts for the setting out of fires on his own land where the circumstances are such that the property of others is thereby endangered, though the cases are conflicting on the question of an employer's liability for the acts of an independent contractor in the use of fire in performing his contract. [St. Louis etc. Ry. Co. v. Madden, supra; Moll on Independent Contractors, Sec. 74; 1 Thompson on Negligence, p. 656.]

As to this Judge Thompson says:

"Upon the plainest considerations, this principle ought to be applied to the case where an independent contractor, acting within the terms of his contract, sets out a fire on the premises of the proprietor, where he is doing work under the contract, and the fire spreads to the land of an adjoining proprietor, doing damage there; for certainly it must be conceded that a fire, unless guarded, is likely to lead to mischief." [1 Thompson on Negligence, p. 656.]

In Loth v. Columbia Theatre Co., supra, the defendant contracted for the alteration of a sign suspended above the street, necessitating the raising and lowering thereof, and the plaintiff, a pedestrian upon the street, was injured by the falling of the sign during the progress of the work. As to the liability of the defendant the court said:

"But the injury in the case at bar resulted directly from the acts called for and made necessary by the contract, that is, the changing and replacing of the sign, and not from acts which were merely collateral to the contract, and if by the negligence and carelessness of the men handling the sign it fell and injured plaintiff, the company is liable *as if it had directly performed such acts.* [16 Am. & Eng. Ency. (2 Ed.), 196.]"

The facts of the case before us, we think, bring it within the scope of this doctrine. The undertaking to propel along a public highway this engine, which would inevitably throw out quantities of sparks and burning coals or embers to be caught by the wind and carried upon property near the highway, was a work attended with much danger to such property, particularly during a dry period of the autumn season. And there appears to be no dispute or conflict in the evidence relative to the danger attendant upon the work. One ought not to be allowed to turn over to a so-called independent contractor such an instrumentality to be driven along the public highway, scattering fire broadcast upon the property of others, with no steps or measures whatsoever taken to lessen the danger, and evade responsibility for the injurious consequences naturally resulting therefrom. A duty rested upon the defendant, we think, to at least see that such precautions were taken as, in reason, would be expected to prevent the happening of such a casualty as occasioned plaintiff's loss, which duty defendant could not

shift or evade. If there be room for a difference of opinion as to a proprietor's liability for acts of an independent contractor who, in the performance of his contract, sets out fires on the premises of the proprietor, when the property of others is thereby endangered, we think that such is not the case where, as here, the owner must know that the performance of the work contracted to be done will in all human probability, if not inevitably, cause fire to be directly cast upon the premises of another. Live sparks would inevitably be hurled out from this engine in propelling it along a highway, and in the ordinary course of things great numbers thereof would fly beyond the limits of the highway and upon the property of others. Upon the occasion in question the danger was enhanced by reason of the fact that it was during a dry period and a strong wind was blowing. It is said that Williams was not confined to a precise time for moving the "outfit," but that this was left somewhat to his discretions. But, for one thing, it appears that dry and solid roads were necessary for the work, and clearly it was not contemplated that it would be done, if possible, when conditions were least favorable for setting out fire. And under the circumstances we consider defendant liable for the act of Williams in driving the engine when a strong wind was blowing, and the country thereabout very dry, as well as for his failure to take other precautions in the premises.

We are of the opinion, therefore, that the evidence was ample to warrant the verdict and judgment against defendant corporation irrespective of whether Williams is to be regarded as its servant or an independent contractor. The principle involved is that in such cases a primary duty rests upon the proprietor, which is personal to him, to see that suitable precautionary measures are taken to prevent injury and loss

193 App. 14

to others, which he cannot in any manner evade.   If he contract with an independent contractor to perform the work, without more, he is liable for the failure of such contractor to take appropriate precautions in the premises, for it is his personal duty to see that such precautions are taken.   In the instant case, though it be conceded that Williams was not defendant's servant but was acting in the capacity of an independent contractor, nevertheless defendant is liable for his neglect to take steps to guard against injuries of the character here in question.   It must be conceded that defendant made no attempt to discharge the said primary duty resting upon it; and the jury, upon abundant evidence, have found that Williams, on his part, neglected and failed to discharge such duty.   For this neglect and failure the defendant, must be held liable.

Complaint lodged against an instruction for plaintiff on the question of the burden of proof on the issue as to whether Williams was an independent contractor or defendant's servant becomes inconsequential because of our views expressed above and need not be discussed.

We think that the judgment ought to be affirmed, and it is so ordered.   *Reynolds, P. J.,* and *Nortoni, J.,* concur.